Wright, J.,
delivered the opinion of the Court.
The Code, at 1166, in order to prevent accidents upon railroads, requires that certain precautions shall be observed; and in the two succeeding sections, defines what shall be the liabilities of railroad companies, as they may, or may not, observe, or cause to be observed, these precautions, by their agents and servants, and declares that the proof of their observances shall be upon the company. And in section 1169, it is enacted, that where a railroad company is sued for killing or injuring stock, the burthen of proof that the accident was unavoidable, shall be upon the company; and the engineer, agent, or employee, shall, in no case, be a witness for it.
The question here is, as to the force to be given to that part of the above Statute which prohibits the en *74 gineer, agent, or employee of a railroad company, from becoming its witness; and which was taken into the Code from the Act of March 2d, 1858, chap. 44 — the competency of a witness, in such a case, anterior to that time, being determinable entirely upon common law principles. It also becomes necessary, in this connection, to consider the clause placing the onus 'probondi upon these corporations.
The accident, namely, the killing of the cow of tbe defendant in error, for which the present action is brought, occurred, according to the bill of exceptions, in August, or September, 1857; and, if need be, we think it might be readily shown, that this Act of Assembly cannot have a retrospective construction, so as to embrace this case. It is only requisite that we refer to Dosh vs. Kleeck, 7 Johns., 478, and the authorities there cited, to establish this position. But, as we have other cases, coming directly within these provisions of the Code, it becomes proper that we give them a construction. The power of the Legislature to pass them has been denied, but in order to determine whether any constitutional question be raised, it is first necessary, that we affix to them a meaning, and in doing so, we are to remember, that if there be a doubt as to their true interpretation, that construction is to be taken, which shall be found in harmony with the Constitution.
The rule, that after it has been established by evidence, on the part of the plaintiff, that his stock has been killed, or injured, by the railroad company, the onus probondi is thrown upon the defendant, we do not understand to be new — it is simply the announcement of ft, common law principle. In Christie vs. Griggs, 2 *75 Campbell, 79, it was held that proof of the injury to the plaintiff, threw upon the defendant, the burthen of showing that he had exercised all the care which he was bound to do.
In Stokes vs. Saltonstall, 18 Peters, 181, which was an action for injuries to a passenger, occasioned by upsetting a stage coach, the Court laid down the rule, as to the burthen of proof, in the following language: “The facts that the carriage was upset, and the plaintiff’s wife injured, are prima facie evidence that there was carelessness, or negligence, or a want of skill on the part of the driver, and throws upon the defendant the burthen of proving that the accident was not occasioned by the driver’s fault. It being admitted that the carriage was upset, and the plaintiff’s wife injured, it is incumbent on the defendant to prove that the driver was a person of competent skill, of good habits, and in every respect, qualified, and suitably prepared for the business in which he was engaged, and that he acted, on this occasion, with reasonable skill, and with the utmost prudence and caution; and if the disaster in question was occasioned by the least negligence, or want of skill, or prudence, on bis part, then the defendant is liable in this action. This rule, as to the burthen of proof, was applied to railway companies, in Carpue vs. the London & Brighton Railroad Company, 52, B., 747, and also, in Skinner vs. the London & Brighton Railroad Company, 2 Eng. Law and Eq. Rep., 360. So, also, in Ellis vs. the Portsmouth & Roanoke Railroad Company, 2 Iredell, 138. This last was a case of damage to the plaintiff’s fence, by a fire, caused by a spark emitted from the defendant’s engine.
The precautions which this Statute requires railway *76 companies to observe, in order to prevent the destruction of human life and property, impose, as we believe, no new or additional duties, over and above what the common law of this State, when applied to their operations, demanded ; and .certainly, none but such as are reasonable, and within the power, of the Legislature to enact: Redfield on Railways, sec. 232, and cases cited in note 1. What, then, are we to understand by the clause: “ and the engineer, agent, or employee of the company, shall, in no case, be a witness for it?” Did the Legislature intend to render incompetent, all engineers, agents and employees of the company ? Whether the matter drawn in question, involved their carelessness or negligence, or not, or only such as were directly interested, by means of being thus implicated ? If the latter be its true meaning, as we think it is, then it simply affirms a common law principle.
In an action against the principal for damages, occasioned by the neglect, or misconduct, of his agent, or servant, the latter is not a competent witness for the defendant, without a release; for he is, in general, liable over to his master, or employer, in a subsequent action, to refund the amount of damages, which the latter may have paid. The principle of this rule of action, applies to the relation of master and servant, or employer and agent, wherever that relation, in its broadest sense, may be found to exist; as, for example, to the case of a pilot, in an action against the captain and owner of a vessel, for mismanagement while the pilot was in charge, or of the guard of a coach, implicated in the like mismanagement, in an action against the proprietor. The doctrine is applicable to railway companies, and to corporations, in general. Perhaps the most direct authorities upon the *77 case now in question, will be found to be Green vs. the New River Company, 4 T. R., 589, and Draper vs. The Worcester & Norwich Railroad Company, 1 Am. Railway Cases, 607. But the principle is supported by numerous decisions, noticed by Mr. Grcenleaf, in his Work on Evidence, at sections 394, 416, 417, from which, and the two cases before quoted, it will be seen that the class of cases we are now considering, namely, such as implicate the engineer, agent, or employee, in carelessness or necjligence, does not fall within the excepted cases, grounded on public necessity and convenience, when an agent may be called to prove acts done for Ms principal, in the usual and ordinary course of his employment.
Having thus shown the extent to which the common law goes, in excluding, as witnesses, engineers, agents, and employees, we next proceed to show that the Statute in question cannot, upon any proper rule of construction, be held to exclude any witness, other than the particular engineer, agent, or employee, whose tortious act, (or acts, if more than one be implicated,) or carelessness and negligence, are drawn in question in the case, and in respect of which he would be liable over to the railway company, if the latter should fail in the action.
It is a well established rule of construction, that, when the provision of a Statute is general, it is subject to the control and order of the common law. In all doubtful matters, and where the language of a Statute -is expressed in general terms, it is to receive such a construction, as piay be agreeable to the rule of the common law, in cases of that nature; for it is not to be intended, that the common law was to be altered further, or otherwise, than the Act expressly declares, or it would have so said.
*78 This is especially so, as to a Statute against common rights, or repugnant to reason: 7 Bac. Ab., Title Statute, (I, sec. 4;) 1 Blac., 91, 86, 118, d; 1 Bay, 98; 3 Murphy, 314; 2 Hum., 285; 3 Sneed, 404; 2 Yer., 603. Many of these authorities hold, that, so far as a Statute may bo against the plain and obvious dictates of reason, it is to be adjudged void; and though we may not be able to assent to this doctrine, when a Statute is clearly and unequivocally expressed, and is in accordance with the Constitution, yet such a consideration does always afford a powerful argument, in support of the conclusion, that the Legislature intended no such absurd and unjust consequences. With these authorities before us, we cannot say that a new rule of evidence was to be introduced, whereby a multitude of persons, before competent, were rendered unfit to be witnesses.
Perhaps the most natural and obvious construction of the Act, is the one we have adopted. It does not say that all engineers, agents, and employees, of the company shall be inadmissible; but uses the language, “the engineer, agent, or employee,” referring, as is most probable, from due examination of the entire Act, only to the particular engineer, agent, or employee, implicated in the carelessness and negligence which caused the accident. If this be not its obvious meaning, certainly we are authorized to say its language is too general to produce so violent a change of the .common law, as is claimed for it. What reason can there be for supposing that the Legislature intended to exclude employees, who might be attending to the wants of the passengers, the affairs of the cars— the porter, the baggage master, and the many other nameless agents engaged, daily, in the service of the com *79 pany — but having no instrumentality in giving impetus, or direction, to the train that did the mischief. Why make a distinction between railway companies and other corporations, or betwixt .them and natural persons, as to the competency of proof. We can suppose no valid reason for so doing, and nothing short of the most direct and unequivocal expressions, would justify such a conclusion. If the relation the witness sustains to the company, and not his interest, is to be the test of his competency, then all that bear that relation, at the. time they come to testify, will be excluded, as witnesses, though they were not in the service of the company when the accident happened; and, on the other hand, such as may have ceased to be in its service, will thereby become competent. Can this be the meaning of the Legislature? We think not. Upon the same reason and authority, we think that the common law rule, that enabled a party to make a witness competent by release, is not interfered with by the Statute. It is not so said in terms ; and there is nothing from which to imply it: 2 Hum., 285, 296; 3 Sneed, 404. In short, that the common law has not been changed, either in this respect, or as it regards the burthen of proof, or the competency, as a witness, of the engineer, agent, or employee; and with all deference, we are of opinion it is precisely where it ought to be. It is but a common case for a statute to be merely declaratory of the common law. The English Acts, as well as our own, are full of examples. and the fact that the prohibition seems to be confined to suits for killing or injuring stock — if it be proper so to limit the act — can make no difference. It does not prove that a witness, before competent, is to *80 be disqualified to testify, nor that one before incompetent is now to become admissible in the class of cases omitted in the Acts. The Statute of Marlbridge, chap. 21; and the Statute of 2 Weston, chap. 3$, furnish an instance. They are, “ that after complaint made to the Sheriff, he may take the posse comitatus and make replevin.” It was held, notwithstanding this Statute, that the Sheriff might take the posse comitatus to serve any other process with, as he could before, at the common law, 7 Bac., Title Statute, (G.,) 448.
This view of the subject, makes it unnecessary to consider the constitutional questions, which have been raised in the argument.
The witness rejected by the Circuit Court, in this case, is stated to have been an employee in the service of the plaintiff in error. There is nothing to show that he had any connection with the accident, or was, in any manner, implicated in any wrong, or mismanagement, whatever. He was prima facie competent, and the Circuit Judge erred in rejecting his evidence, for which error the judgment of the Circuit Court is reversed, and the cause remanded for another trial.